J-A24039-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| ERIC WELLS, | : | |
| | : | |
| Appellant | : | No. 518 WDA 2017 |

Appeal from the PCRA Order March 10, 2017
in the Court of Common Pleas of Washington County,
Criminal Division, No(s):  CP-63-CR-0001922-2013

BEFORE:  MOULTON, SOLANO and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:　　　　　　**FILED DECEMBER 14, 2017**

Eric Wells ("Wells") appeals from the Order dismissing his first Petition filed pursuant to the Post Conviction Relief Act ("PCRA").[1]  We affirm.

In its Order and Pa.R.Crim.P. 907 Notice (hereinafter "PCRA Court Order and Rule 907 Notice"), the PCRA court set forth the relevant factual and procedural history, which we adopt for the purpose of this appeal.  **See** PCRA Court Order and Rule 907 Notice, 1/18/17, at 1-5.

Wells filed a Response to the PCRA court's Order and Rule 907 Notice. On March 10, the PCRA court entered an Order dismissing the Petition. Wells filed a timely Notice of Appeal.  Thereafter, the PCRA court filed an

---

[1] **See** 42 Pa.C.S.A. §§ 9541-9546.

J-A24039-17

Opinion pursuant to Pa.R.A.P. 1925(a).[2]

On appeal, Wells raises the following issues for our review:

1. Was plea counsel ineffective in permitting the trial court to participate in plea negotiations, a violation of due process, by meeting with the trial court and the prosecution in chambers to discuss issues of guilt, innocence, level of guilt, and an appropriate period of incarceration before the proposed plea agreement was entered?

2. Was [] Wells unlawfully induced into pleading guilty to homicide generally based on the ineffective assistance of plea counsel[,] who failed to adequately investigate or advise [] Wells regarding potential defenses[,] and erroneously advised [] Wells that there were no available defenses when [] Wells was intoxicated at the time of the incident and struck the victim only one time?

3. Did plea counsel render ineffective assistance by neglecting to adequately discuss with [] Wells his appellate rights in conjunction with his right to withdraw his plea?

4. Whether plea counsel was ineffective in advising [] Wells to plead guilty to robbery as either principal or an accomplice[,] where [] Wells lacked the requisite specific intent to commit or facilitate a robbery of either [Zach] DeCicco or [Timothy] McNerney, which plea counsel actually argued?

Brief for Appellant at 4 (issues renumbered for ease of disposition).

We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. Further, we grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions.

_____

[2] The PCRA court did not order Wells to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b)

- 2 -

Where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review plenary.

***Commonwealth v. Ford***, 44 A.3d 1190, 1194 (Pa. Super. 2012) (citations omitted).

In his first issue, Wells contends that his plea counsel was ineffective for permitting the trial court to participate in plea negotiations. Brief for Appellant at 16-17. Wells asserts that, "absent the trial court's involvement and agreement in this case, it would be absurd on its face to urge a client to enter a plea to homicide[,] generally[,] and robbery arising out of the same criminal episode." ***Id***. at 17-18. Wells claims that "it only makes sense for an attorney to urge his client to enter such a plea if he had been made a promise by the trial court." ***Id***. at 18. Wells argues that "[s]ince the trial court ensured [*sic*] [plea counsel] that it would not find [] Wells guilty of felony murder if he entered the plea proposed by the trial court, [] Wells['s] due process rights were violated." ***Id***. Wells contends that his plea counsel "was ineffective for failing to raise this issue and, in light of [***Commonwealth v***.] ***Evans***, [252 A.2d 689 (Pa. 1969),] could have no reasonable basis for not doing so." Brief for Appellant at 18. Wells claims that he suffered prejudice because, absent the trial court's interference, his plea counsel would not have advised him to plead guilty to both murder and robbery, and would have instead advised Wells to plead guilty to involuntary manslaughter or proceed to trial. ***Id***. at 19. Wells argues that, pursuant to ***Evans***, a plea entered on the basis of a sentencing agreement in which the

judge participates cannot be considered a voluntary plea. *Id*. at 19-20. Wells asserts that the PCRA court incorrectly relied on **Commonwealth v. Vealey**, 581 A.2d 217 (Pa. Super. 1990), in reaching its determination that Wells suffered no prejudice relative to his **Evans** claim. Brief for Appellant at 20.

In its Opinion, the PCRA court addressed Wells's first issue, set forth the relevant law, and determined that the issue lacks merit. **See** PCRA Court Order and Rule 907 Notice, 1/18/17, at 5-6, 14-17 (wherein the PCRA court concluded that there is no evidence of record that the trial judge was involved in the plea negotiations between Wells, his plea counsel, and the Commonwealth); **see also id**. at 17-18 (wherein the PCRA court determined that, even if Wells had presented evidence that the trial judge was involved in the plea negotiations, Wells suffered no prejudice, as the trial judge declined to find Wells guilty of second-degree murder or to impose the felony murder rule, despite evidence supporting those charges). As Wells failed to present any evidence that the trial judge was involved in his plea negotiations, plea counsel cannot be faulted for failing to object to the trial judge's participation. **See Commonwealth v. Poplawski**, 852 A.2d 323, 327 (Pa. Super. 2004) (holding that counsel cannot be found ineffective for failing to pursue a baseless or meritless claim). As we agree with the reasoning of the PCRA court, which is supported by the record and free of

- 4 -

legal error, we affirm on this basis as to Wells's first issue. *See* PCRA Court Order and Rule 907 Notice, 1/18/17, at 14-17.

As Wells's second and third issues are related, we will address them together. In his second issue, Wells contends that he did not possess the requisite malice to support a conviction of third-degree murder. Brief for Appellant at 23. Wells asserts that "[n]o reasonable person, who weighs 155 pounds, and strikes a person weighing thirty pounds more than him, reasonably expects that one punch would kill the person he struck." *Id*. Citing to **Commonwealth v. Alexander**, 383 A.2d 887 (Pa. 1987), Wells claims that none of the circumstances deemed sufficiently egregious to warrant a finding of aggravated assault in a "one-punch aggravated assault" case were present in this case.[3] Brief for Appellant at 25. Based on his assertion that there was no evidence of malice, Wells argues that "there was a valid defense to homicide, *i.e.*, that the crime[,] at most[,] rose to the level of involuntary manslaughter …." *Id*. Wells contends that his plea counsel's advice that Wells had no viable defense was erroneous, and plea counsel had no reasonable basis for not informing Wells that he "had a

---

[3] In **Alexander**, the Court announced that the following factors can be utilized in ascertaining whether the defendant intended to inflict serious bodily injury by one blow: (1) if the defendant "was disproportionately larger or stronger than the victim;" (2) whether the defendant would have escalated his attack but was restrained from doing so; (3) whether the defendant was in possession of a weapon; and (4) "statements before, during, or after the attack which might indicate [defendant's] intent to inflict further injury upon the victim." **Alexander**, 383 A.2d at 889.

strong[,] legally valid defense to the homicide charge." *Id*. at 25-26. Wells asserts that he would not have entered his plea if plea counsel had properly advised him. *Id*. at 26.

Wells further claims that the PCRA court erred by determining that plea counsel had a reasonable basis to advise Wells to plead guilty to homicide, generally, and robbery without the benefit of any testimony from plea counsel. *Id*. at 28. Wells argues that the PCRA court also erred by failing to make the appropriate inquiry of whether plea counsel's advice caused Wells to enter an unknowing and involuntary plea. *Id*. Wells contends that the only explanation for plea counsel's advice to plead guilty to homicide, generally, and robbery based on the same set of facts is that the trial judge promised that he would not find Wells guilty of felony murder. *Id*. at 29-30. Wells asserts that the PCRA court improperly relied on aggravated assault cases when determining the level of malice necessary for homicide. *Id*. at 30.

In his third issue, Wells contends that an evidentiary hearing was required to determine whether plea counsel had advised Wells of his right to file a direct appeal. *Id*. at 33. Wells asserts that, "had counsel adequately advised [Wells] regarding his defense to homicide[,] and that [Wells] could have pursued an involuntary manslaughter defense, [] Wells would have moved to withdraw his plea or never entered the plea." *Id*. Wells claims that he suffered actual prejudice because his plea counsel had no reasonable

basis not to discuss with Wells his appellate rights, and there would have been grounds for an appeal based on his defense to homicide. *Id*. at 35.

> [T]o convict a defendant of the offense of third[ ]degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought. This Court has long held that malice comprehends not only a particular ill-will, but [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

*Commonwealth v. Fisher*, 80 A.3d 1186, 1191 (Pa. 2013) (citations omitted).

> This Court has further noted:

> [T]hird[-]degree murder is not a homicide that the Commonwealth must prove was committed with malice and without a specific intent to kill. Instead, it is a homicide that the Commonwealth must prove was committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a specific intent to kill. Indeed, to convict a defendant for third[-]degree murder, the jury need not consider whether the defendant had a specific intent to kill, nor make any finding with respect thereto.

*Id*. As with other elements of crime, the trier of fact may infer criminal intent, knowledge and recklessness from circumstantial evidence. *See Commonwealth v. Moore*, 395 A.2d 1328, 1332 (Pa. Super. 1978)

In its Opinion, the PCRA court addressed Wells's second and third issues, set forth the relevant law, and determined that the issues lack merit. *See* PCRA Court Order and Rule 907 Notice, 1/18/17, at 5-10 (determining that "[s]pecific intent is not a required element of third[-]degree murder" and that "the facts establish [Wells's] intention to cause serious bodily harm

during the confrontation."); *see also* PCRA Court's Pa.R.A.P. 1925(a) Opinion, 3/9/17, at 2-5 (wherein the PCRA court further explained its determination that Wells's ineffectiveness claims regarding a defense to third-degree murder are meritless).

Here, the evidence of record reveals that, during the course of a robbery, Wells delivered a single punch to the victim with such force that the victim immediately fell to the ground and struck his head. Indeed, Wells admitted to police that he had punched the victim with such force that he "knocked him out." N.T., 8/14/13, at 60. We conclude that these facts support a determination that Wells acted with a "wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty" so as to satisfy the malice element of third-degree murder. *See Fisher*, 80 A.3d at 1191. The fact that Wells did not intend to kill the victim is of no consequence. *Id*. We therefore agree with the PCRA court's determination that plea counsel was not ineffective for failing to advise Wells that he had a defense to third-degree murder, and affirm as to Wells's second and third issues. *See* PCRA Court Order and Rule 907 Notice, 1/18/17, at 5-10; *see also* PCRA Court's Pa.R.A.P. 1925(a) Opinion, 3/9/17, at 2-5.

In his fourth issue, Wells contends that, based on his plea counsel's statement to the trial court during sentencing that Wells had no criminal intent to commit robbery, counsel could have no reasonable basis to advise

Wells to plead guilty to robbery as a principal. Brief for Appellant at 32. Wells asserts that, although plea counsel had indicated that his advice was based on the Commonwealth's charge of accomplice liability, an intent element is also required for accomplice liability. *Id*. Wells claims that, because he denied that he intended to commit the robbery, a valid defense to the robbery charge existed. *Id*. at 33. Wells argues that, had plea counsel explained that Wells had a defense to robbery, Wells would not have pleaded guilty to that charge. *Id*.

In its Opinion, the PCRA court addressed Wells's fourth issue, set forth the relevant law, and determined that the issue lacks merit. *See* PCRA Court Order and Rule 907 Notice, 1/18/17, at 10-13 (wherein the PCRA court determined that the record supports Wells's conviction of conspiracy to commit robbery). We agree with the reasoning of the PCRA court, which is supported by the record and free of legal error, and affirm on this basis as to Wells's fourth issue. *See id*.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/14/2017

- 9 -

Circulated 11/16/2017 10:37 AM

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    )
    )
    )
    )
v.    )    No.    CR 1922 - 2013
    )
    )
ERIC WELLS    )
    Defendant.    )
    )

## ORDER

AND NOW, this 9th day of MARCH, 2017, after reviewing the Defendant's Response to Pa.R.Crim. 907 Notice of Intent to Dismiss, it is hereby ORDERED, ADJUDGED, and DECREED that the Defendant's PCRA is DISMISSED. Pursuant to Rule 910 of the Pennsylvania Rules of Criminal Procedure, the Defendant has the right to file an appeal to the Superior Court within thirty (30) days of this date of this order. The appeal must be filed with the Washington County Clerk of Courts. PURSUANT TO RULE 908(E), THE DEFENDANT SHALL BE SERVED WITH NOTICE OF THIS ORDER BY CERTIFIED MAIL, RETURN RECEIPT REQUESTED.

By way of further explanation, this Court provided notice to the Defendant by way of an Order dated January 17, 2017 that it intended to dismiss the Defendant's amended PCRA petition without a hearing. The Court found no genuine issues of material fact based upon the reasons set forth in the Order. Through his counsel, the Defendant filed a timely response to the Court's notice of intent to dismiss. The Court finds that its January 17th Order addresses the issues raised in both the Defendant's amended PCRA petition and response. Consequently, the

Court need not reiterate its reasoning in detail and will address the Defendant's response in abridged fashion below.

The Defendant argues in his response that the Court erred in not affording him an evidentiary hearing. The Defendant avers that the Court has fashioned a reasonable basis for trial counsel's strategy, which was not clear and obvious from the record. The Defendant quotes from *Commonwealth v. McGill* to support his position that "the court is not to glean, surmise, or speculate with regard to the strategy of counsel except in those rare instances where his strategy is clear and obvious from the record under review." 832 A.2d 1014, 1023 (Pa. 2003).

"There is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary." *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super. Ct. 2008) (quoting *Commonwealth v. Barbosa*, 819 A.2d 81 (Pa. Super. Ct. 2003)). "[S]uch a decision is within the discretion of the PCRA court and will not be overturned absent an abuse of discretion." *Commonwealth v. Mason*, 130 A.3d 601, 617 (Pa. 2015). This Court finds that trial counsel's strategy is clear and obvious from the record under review and that he understood the circumstance in which the Defendant found himself.[1]

Trial counsel argued zealously on his client's behalf. Trial counsel pointed to Troy Simmons as the "catalyst" of the October 14, 2013 confrontation that killed Timothy McNerney ("McNerney"). Transcript of Proceedings Held on May 27, 2014 at p. 17, LL. 19-22. He explained to Judge Borkowski that "[a]s Mr. McNerney attempted to aid his friend [Zach DeCicco], Mr. Wells delivered, for a lack of a better term, a sucker punch to Mr. McNerney, causing Mr. McNerney to fall back and strike his head and die." *Id.* For these reasons, trial

---

[1] The Defendant entered into a general homicide plea on May 27, 2014 before Judge Edward Borkowski, as well as one count of Robbery. The Commonwealth and the Defendant agreed that the Court would determine the degree of guilt. Transcript of Proceedings Held on May 27, 2014 at p. 2, LL. 24-25; p. 3, L. 3.

counsel argued that the Defendant should not be subject first degree murder because the Defendant's single punch evidenced no intention to kill.

Trial counsel also argued that the Defendant should not be subject to the Felony Murder Rule because his client had no intention to commit a robbery.[2] As trial counsel emphasized, "[T]here, certainly, was no intent on Mr. Wells to rob anybody. ... The argument is that this is a one punch case, which through accomplice liability, may be a robbery, but that intent was not utilized until after the aggravated assault/manslaughter. That's the argument." *Id.* at p. 17, LL. 23-24; p. 18, LL. 9-13.

In its January 17, 2017 order, the Court emphasized that the October 14, 2013 incident started as robbery.[3] This incident happened when Adam Hankins ("Hankins"), Simmons and the Defendant confronted DeCicco and McNerney. The Court stated:

> To reiterate, the testimony of record makes clear that the confrontation started as a robbery when the Defendants and DeCicco and McNerney met on Maiden Street. When DeCicco would not give Simmons his cell phone, Simmons punched DeCicco, who then fell to the ground and continued to get beaten by multiple persons for 20 seconds until there was a sudden break that allowed him to escape.

*See* Order dated January 17, 2017, p. 13.

The entire incident began as a robbery. The intent to commit the felony had already been formulated before any assault took place. "When an actor engages in one of the statutorily enumerated felonies and a killing occurs, the law, via the felony-murder rule, allows the finder of fact to infer the killing was malicious from the fact that the actor engaged in a felony of such a dangerous nature to human life because the actor, as held to a standard of a reasonable man, knew or should have known that death might result from the felony." *Commonwealth v. Legg,*

---

[2] McNerney's wallet and cellular phone were taken as a result of the confrontation. The Defendant wound up with McNerney's phone and trial counsel made that acknowledgment. Transcript of Proceedings Held on May 27, 2014 at p. 18, LL. 7-8.

[3] *See* Transcript of Preliminary Hearing Held on August 14, 2013 at pp. 18-19 (testimony of victim, Zach DeCicco).

417 A.2d 1152, 1154 (Pa. 1980). By committing an unlawful act (sucker punching McNerney) to assist the robbery,[4] the Defendant was subject to the Felony Murder Rule (second degree murder and carrying a sentence of life in prison). *See* 18 Pa.C.S.A. § 1102(b); *Commonwealth v. Middleton*, 467 A.2d 841, 845 (Pa. Super. Ct. 1983). A robbery that inflicts serious bodily harm is defined as a crime of violence and considered a felony of the first degree, thereby subjecting a perpetrator to the Felony Murder Rule. 18 Pa. C.S.A. § 2502; 42 Pa. C.S.A. § 9714(g); *Commonwealth v. Greene*, 25 A.3d 359, 362 (Pa. Super. Ct. 2011); *Commonwealth v. Lambert*, 795 A.2d 1010, 1022 (Pa. Super. Ct. 2002).[5]

For the above-mentioned reasons, this Court finds PCRA counsel's central argument—that the facts support, at best, an involuntary manslaughter charge and that trial counsel was ineffective for advising the Defendant that he had no available defense—to be wide of the mark.[6] Further, even if trial counsel did not explain involuntary manslaughter to the Defendant, there was no ineffectiveness because the record is clear and obvious that the facts do not support such conviction. *See Commonwealth v. Davis*, 652 A.2d 885, 887 (Pa. Super. Ct. 1995) ("[T]rial counsel cannot be held ineffective for failing to take futile actions or to raise a meritless claim."); *see also Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001) ("Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different."). The

---

[4] The Defendant became an accomplice to the robbery and accomplices are legally accountable for another person's conduct involved in the commission of crimes. 18 Pa.C.S.A. § 306(b)(3).

[5] The Defendant's PCRA counsel cited *Commonwealth v. Alexander*, 383 A.2d 887 (Pa. 1978) and *Commonwealth v. Burton*, 2 A.3d 598, 604 (Pa. Super. Ct. 2010). In his Amended PCRA, Petition to distinguish the facts therein from those involving his client. Therefore, this Court addressed said cases in its January 17, 2017 order. Therein, this Court cited *Burton* concerning its conclusion that the Defendant's one punch supported a finding of malice. Now, PCRA counsel claims that *Burton* is not applicable because the victim in *Burton* did not die, but merely sustained serious bodily injury.

[6] "A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful action in a reckless or grossly negligent manner, or the doing of a lawful act ion a reckless or grossly negligent manner, he causes the death of another person." 18 Pa.C.S.A. § 2504(a).

4

Defendant was not convicted of either first or second degree murder and the facts as discussed above belie a finding that the Defendant was guilty of involuntary manslaughter.

BY THE COURT:

Gary Gilman, Judge

## IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA )
                               )
                               )
                               )
v.                             )        No.    CR 1922 - 2013
                               )
                               )
ERIC WELLS                     )
        Defendant.             )
                               )

## ORDER and NOTICE

AND NOW, this 17th day of JANUARY, 2017, it is hereby ORDERED, ADJUDGED and DECREED that the Defendant, Eric Wells, is served notice of the Court's intention to dismiss his Amended Post-Conviction Relief Act Petition without a hearing inasmuch as the Court finds that there are no genuine issues of material fact based upon the reasons set forth below.

It is further ORDERED that the Defendant's petition will be dismissed on February 16, 2017 (no less than 30 days from the date of this order and notice), in accordance with Pennsylvania Rule of Criminal Procedure 907 unless the Defendant, either representing himself or through counsel, responds to this Order and Notice demonstrating why the Court should not dismiss the Defendant's petition for relief under the Post-Conviction Relief Act ("PCRA").

## PROCEDURAL HISTORY

On August 6, 2013, the Defendant was charged with one count of Criminal Homicide (F-1), two counts of Robbery-Inflicting Serious Bodily Injury (F-1), one count of Criminal Conspiracy to Promote or Facilitate Criminal Homicide and/or Robbery (F-1), and one count of

Theft by Unlawful Taking, Movable Property (M-1). Identical criminal charges were filed against two other persons, Adam Hankins ("Hankins") and Troy Simmons ("Simmons"). The charges stemmed from a confrontation occurring on or about October 14, 2012 in the City of Washington wherein Timothy McNerney ("McNerney") was killed and his cell phone and wallet were taken.

The three co-defendants and the Commonwealth entered into plea agreements on May 27, 2014 before the Honorable Judge Edward Borkowski. The respective defendant and the Commonwealth agreed that each defendant would enter a general plea of guilty to homicide and robbery. Transcript of Proceedings Held on May 27, 2014 at pp. 2-3. Further, as a finder of fact, the Court would then determine the degree of guilt regarding the general pleas of homicide. *Id.* at p. 3, LL. 3-5. After reviewing the "pleadings, pretrial pleadings, ... , the statements of each Defendant, the Affidavits of Probable Cause, and the transcript of the preliminary hearing" and after hearing arguments by the attorneys, the Court concluded that it would find the defendants guilty of third degree murder, as well as one count of robbery. *Id.* at p. 3, LL. 19-24; p. 23, LL. 13-20. In addition, the Court set a sentencing date of August 25, 2014 and ordered pre-sentence investigation reports. *Id.* at p. 23, LL. 21-23.

At the August 25, 2014 sentencing hearing, the Court sentenced the Defendant to 10 to 25 years of incarceration for third degree murder and a consecutive period of 3 to 6 years of incarceration for robbery, with a 5 year period of probation to follow. Transcript of Sentencing Proceedings Held on August 25, 2014 at p. 52, LL. 3-8. In addition, the Court imposed restitution as noted in the pre-sentence investigation report, travel expenses, and funeral expenses of McNerney. *Id.* at p. 52, LL. 8-10.

2

The Defendant did not file any post-sentencing motions, nor did he file a direct appeal to the Superior Court. He did, however, file a timely PCRA petition on August 31, 2015. The Court appointed Stephen Paul, Esq. as PCRA counsel on September 11, 2015. On February 23, 2016, the case was reassigned to Timothy Lyon, Esq. On June 30, 2016, the case was reassigned to Andrew Salemme, Esq. Attorney Salemme filed an Amended PCRA Petition on October 20, 2016.

In his amended petition, the Defendant claims the following four reasons for why relief should be granted:

1. Mr. Wells was unlawfully induced into pleading guilty to homicide generally based upon the ineffective assistance of plea counsel who failed to adequately investigate or advise Mr. Wells regarding potential defenses and erroneously advised Mr. Wells that there were no available defenses when Mr. Wells was intoxicated at the time of the incident and struck the victim only one time.

2. Attorney DeRiso[, the Defendant's trial counsel,] was ineffective in advising Mr. Wells to plead guilty to robbery as either a principal or an accomplice where Mr. Wells lacked the requisite specific intent to commit a robbery of either Mr. DeCicco or Mr. McNerney, which Mr. DeRiso actually argued.

3. Attorney DeRiso was ineffective in permitting the trial court to participate in plea negotiations, a violation of due process, by meeting with the trial court and the prosecution in chambers to discuss issues of guilt, innocence, the level of guilt, an appropriate period of incarceration before the proposed plea agreement was entered.

4. Attorney DeRiso rendered ineffective assistance by neglecting to adequately discuss with Mr. Wells his appellate rights.

Amended Petition for Post-Conviction Relief, ¶ 11.

The relief requested by the Defendant is that he be permitted to withdraw his guilty plea and, in the alternative, his direct appeal rights be reinstated along with his right to file a post-sentence motion to withdraw his guilty plea. *Id.* ¶ 8.

3

## FACTS

Three persons testified at the Defendant's preliminary hearing, Coroner S. Timothy Warco ("Coroner Warco"), Detective Daniel Stanek ("Detective Stanek"), and Zach DeCicco ("DeCicco"). The only witness to the crimes committed by the Defendant, Simmons, and Hankins was DeCicco. According to DeCicco, he and McNerney, two students from Washington and Jefferson College, were leaving a bar called the Brew House at approximately 2 a.m. on October 4, 2012. Transcript of Preliminary Hearing Held on August 14, 2013 at p. 15, LL. 3-15. The two were walking back to Washington and Jefferson College on Maiden Street when they were confronted by the Defendant, Simmons, and Hankins near Lombardi's, an automotive store. *Id.* at p. 17, LL. 5-21. One of the three co-defendants asked DeCicco for his cell phone. *Id.* at p. 18, LL. 19-21. DeCicco did not comply with the demand and was then hit in the nose. *Id.* at p. 19, LL. 9-15. DeCicco testified that after being struck, he went to the ground and was punched and kicked by what felt like more than one person for around twenty seconds. *Id.* at p. 19, LL. 8-23; p. 20, LL. 2-9. During the beating, DeCicco was unable to determine if any of the Defendants turned on McNerney. *Id.* at p. 20, LL. 5-7. DeCicco testified that when he felt "them stop for a moment," he "got up and ran away." *Id.* at p. 20, L. 13-14. DeCicco never looked back, so he was unaware of where McNerney was or of his circumstances. *Id.* at p. 20, LL. 15-20.

Detective Stanek of the City of Washington Police Department interviewed DeCicco and the three co-defendants. According to Detective Stanek, Simmons confessed to confronting DeCicco and demanding his cell phone. *Id.* at p. 59, LL. 14-19. Further, Simmons acknowledged

4

that he was the first to strike DeCicco and that once DeCicco fell to the ground, the Defendant and Hankins joined the assault. *Id.* at p. 61, LL. 5-9.[1]

Sadly, McNerney was killed during the confrontation—Coroner Warco testified that McNerney died from blunt force trauma to the head and ruled the manner of death to be a homicide. *Id.* at p. 8, LL. 5-6. During the investigation, Detective Stanek interviewed the Defendant. As recounted by Detective Stanek, the Defendant admitted that he had been the one that punched McNerney and "knocked him out." *Id.* at p. 60, LL. 1-2. Further, the Defendant told Detective Stanek that he got McNerney's cell phone from Simmons. *Id.* at p. 60, LL. 9-13.

## DISCUSSION OF LAW AND CLAIMS

The four grounds for relief raised by the Defendant all concern ineffective assistance of counsel. The PCRA provides relief to those individuals whose convictions or sentences resulted from "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii). The Pennsylvania Supreme Court "has interpreted this to mean that in order to obtain relief on a claim alleging ineffective assistance of counsel, a petitioner must prove that (1) the claim underlying the ineffectiveness claim has arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) counsel's actions resulted in prejudice to petitioner." *Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009) (citations omitted). "Where it is clear that a petitioner has failed to meet any of the three, distinct prongs... the claim may be disposed of on that basis alone, without a determination of whether the other two prongs have been met." *Commonwealth v. Steele*, 961 A.2d 786, 797 (Pa. 2008). "A chosen strategy will not be found to have lacked a reasonable basis unless it is proven 'that an

---

[1] According to Detective Stanek, the Defendant told him that Simmons and Hankins continued to beat DeCicco when he was on the ground and that the Defendant did not participate. Transcript of Preliminary Hearing Held on August 14, 2013 at p. 60, LL. 22-23.

alternative not chosen offered a potential for success substantially greater than the course actually pursued.'" *Commonwealth v. Williams*, 899 A.2d 1060, 1064 (Pa. 2006) (quoting *Commonwealth v. Howard*, 719 A.2d 233, 237 (Pa. 1998)). "Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability that, but for counsel's error, the outcome of the proceeding would have been different." *Commonwealth v. Pierce*, 786 A.2d 203, 213 (Pa. 2001). "Finally, the law presumes that counsel was effective and the burden of proving that this presumption is false rests with the petitioner." *Cox*, 983 A.2d at 678.

Claims one, two, and four in the Defendant's amended PCRA petition are interrelated. While the Court will address each in turn, the Court notes that its analysis of one claim informs the other.

Section 2502 of the Crimes Code defines the three degrees of murder. With regard to third degree murder, the statute does not set forth the requisite *mens rea*, providing only that "[a]ll other kinds of murder [that are not first degree or second degree] shall be murder of the third degree." 18 Pa.C.S. § 2502(c). Case law has further defined the elements of third degree murder. As explained by the Pennsylvania Supreme Court:

> [T]o convict a defendant of the offense of third[ ]degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought. This Court has long held that malice comprehends not only a particular ill-will, but ... [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

*Commonwealth v. Santos*, 876 A.2d 360, 363 (Pa. 2005) (alteration in original) (internal citation, quotation, and emphasis omitted); *see also Commonwealth v. Drum*, 58 Pa. 9, 15 (1868) (defining malice as quoted above). The Pennsylvania Supreme Court has further noted:

6

[T]hird degree murder is not a homicide that the Commonwealth must prove was committed with malice and without a specific intent to kill. Instead, it is a homicide that the Commonwealth must prove was committed with malice, but one with respect to which the Commonwealth need not prove, nor even address, the presence or absence of a specific intent to kill. Indeed, to convict a defendant for third degree murder, the jury need not consider whether the defendant had a specific intent to kill, nor make any finding with respect thereto.

*Commonwealth v. Meadows*, 787 A.2d 312, 317 (Pa. 2001) (quoting *Commonwealth v. Young*, 748 A.2d 166, 174-75 (Pa. 1999)).

To summarize, third degree murder is an intentional act that is characterized by malice and results in death, intended or not. *Commonwealth v. Fisher*, 80 A.3d 1186, 1193 (Pa. 2013).

The Defendant acknowledged that he punched the decedent, but argues that he merely punched him one time and that case law demonstrates that one punch cannot support a charge of homicide. At the May 27, 2014 hearing when the Court entered its verdict, Attorney DeRiso (plea counsel) stated on behalf of the Defendant, "Mr. Wells is the individual who threw that fatal punch to that young man that evening." Transcript of Proceedings Held on May 27, 2014 at p. 16, LL. 24-25. Further, Attorney DeRiso emphasized that "after Mr. McNerney fell to the ground, he was not touched. He was not struck thereafter." *Id.* at p. 17, L. 25; p. 18, L. 3. Moreover, "[t]here was no intent on the part of Mr. Wells to kill Mr. McNerney." *Id.* at p. 17, LL. 22-23. The Defendant argues that a solitary punch is not sufficient to sustain a conviction for third degree murder based on the absence of any intent to cause serious bodily harm. Rather, the Defendant believes that there is only sufficient evidence for a plea to an involuntary manslaughter charge, and therefore Attorney DeRiso's advice that the Defendant had no viable defenses was erroneous.[2]

---

[2] A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person. 18 Pa.C.S. § 2504(a).

7

To support his argument, the Defendant points to *Commonwealth v. Alexander.* In *Alexander*, the defendant walked up to the victim on a street corner and punched the victim once in the face, breaking his nose. 383 A.2d 887 (Pa. 1978). The defendant was convicted of aggravated assault. On appeal, the Supreme Court reversed the judgment of sentence, holding: "While there can be no dispute about the physiological significance of the head, where the victim did not actually sustain the requisite serious bodily injury, we cannot say that the mere fact that a punch was delivered to that portion of the body is sufficient, without more, to support a finding that appellant intended to inflict serious bodily injury." *Id.* at 889.The Defendant in the present case analogizes to the facts in *Alexander* to contend that delivering a single punch and then walking away cannot evince the malice necessary to establish third degree murder. This Court finds that *Alexander* is not dispositive because the case does not address the facts at bar— namely, unlike the victim in *Alexander*, McNerney sustained serious bodily injury as a result of the punch to the point of death.

In "one punch" cases involving victims that did sustain serious bodily injury, the Superior Court has found the requisite intent to support the charge of aggravated assault. In *Commonwealth v. Patrick*, two witnesses saw the accused approach the victim from the side as the victim walked along the street with his hands in his pockets. 933 A.2d 1043, 1044 (Pa. Super. Ct. 2007). The victim did not see the accused approach him. Without warning, the accused punched the victim one time in the side of his head with enough force to knock the victim off of his feet. The victim spent about two days in a coma due to severe brain trauma. The Superior Court found that the "Commonwealth's evidence at the preliminary hearing demonstrated [the defendant] inflicted an assault on the victim with reckless indifference under circumstances which virtually assured serious bodily injury." *Id.* at 1047. In making this finding, the Superior

8

Court pointed to the fact that the punch was a surprise attack that "knocked the defenseless and unsuspecting victim off of his feet without reflexive protection, causing the victim to strike his head on the concrete." *Id.*

Similarly, *Commonwealth v. Burton* involved a victim that sustained serious bodily injury as a result of being caught unawares by a single punch. 2 A.3d 598 (Pa. Super. Ct. 2010). There, the Superior Court found sufficient evidence of intent to cause serious bodily injury, emphasizing the fact that the victim was unprepared when he was struck. As explained by the *Burton* court:

> The fact that the victim was caught unaware is further supported by the severity of Mr. Price's injuries. As stated above, the victim suffered brain trauma as well as two facial and two spinal fractures. Indeed, throughout his brief, Appellant insists that the fall, rather than his punch, caused [the victim's] life-threatening damages. *Patrick*, supports the conclusion that such evidence was sufficient to establish that Appellant had the requisite *mens rea* to sustain a conviction for aggravated assault.

*Id.* at 604.

After a thorough review of the record and considering the above case law, this Court concludes that the facts support the trial court's verdict of third degree murder. The one punch delivered by the Defendant to McNerney did not take place in a vacuum. As Attorney DeRiso said, "Mr. Wells delivered, for a lack of a better term, a sucker punch to Mr. McNerney, causing Mr. McNerney to fall back and strike his head and die." Transcript of Proceedings Held on May 27, 2014 at p. 17, LL. 19-22. Like the victims in *Patrick* and *Burton*, McNerney sustained serious bodily injury as a result of being punched without warning rendering him unconscious and unable to protect his head from striking the ground. Echoing the Superior Court in *Burton*, the fact that McNerney was caught unawares is supported by the severity of his injuries, which were ultimately fatal. That the Defendant did not intend to kill McNerney when he punched him

9

does not alter this Court's conclusions. Specific intent is not a required element of third degree murder; the facts establish the Defendant's intention to cause serious bodily harm during the confrontation. Accordingly, the Court finds that the Defendant's PCRA claim that Attorney DeRiso's advice with respect to the plea had no reasonable basis is without merit.

With respect to the Defendant's alleged intoxication supporting a plea or conviction of involuntary manslaughter, this Court finds that the law is not on his side.

> Where the question of intoxication is introduced into a murder case its only effect could be to negate the specific intent to kill which is required for a finding of murder of the first degree.... If intoxication does render an accused incapable of forming the necessary intent the result is to reduce the crime to a lesser degree of murder. In no event does the reduction change the character of the crime from murder to manslaughter.

> *Commonwealth v. Breakiron,* 571 A.2d 1035, 1041 (Pa. 1990) (quoting *Commonwealth v. England,* 375 A.2d 1292, 1301 (Pa. 1977)).

For the above reasons, the Court finds that the Defendant's first claim in his amended PCRA petition lacks merit.

Even if the Commonwealth were unable to prove the requisite intent to convict the Defendant of third degree murder based upon the aforementioned, this Court finds that the record supports a conviction of second degree murder. "A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa. C.S.A. § 2502(b); *see Commonwealth v. Miller,* 35 A.3d 1206, 1212 (Pa. 2012). "Perpetration of a felony" is statutorily defined, *inter alia,* as "[t]he act of the defendant in engaging in ... the commission of, or an attempt to commit, ... robbery...." 18 Pa.C.S. § 2502(d).

Based upon the testimony of record, it is clear that the confrontation started as a robbery. This was according to DeCicco's testimony and Simmons confession to Detective Stanek.

10

Simmons demanded DeCicco's cell phone. When DeCicco would not provide Simmons with the phone, Simmons punched DeCicco, who then fell to the ground and continued to get beaten by multiple persons for 20 seconds. Sometime after the initial punch to DeCicco, the Defendant punched McNerney who then fell to the ground and subsequently died. According to Detective Stanek, none of the Defendant's took responsibility for "physically" taking McNerney's cell phone. Transcript of Preliminary Hearing Held on August 14, 2013 at p. 61, LL. 10-13. The Defendant, however, did come into possession of McNerney's cell phone. According to the Defendant, he took the cellphone from Simmons at Hankins' residence. *Id.* at p. 61, LL. 14-21. Attorney DeRiso confirmed at the May 27, 2014 hearing that "my client did end up with that cell phones [sic]." Transcript of Proceedings Held on May 27, 2014 at p. 18, LL. 7-8.

Whether the Defendant picked up McNerney's cell phone at the time of the confrontation or got it from Simmons at Hankins' house is immaterial to the Court's conclusion regarding second degree murder. Even if the Defendant were not the person who picked up the cell phone at the scene, the record supports a charge of conspiracy to commit robbery. A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:

> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a).

The Commonwealth must prove that: 1) the defendant entered into an agreement with another person to commit or aid in the commission of a crime; 2) he shared the criminal intent with that other person; and 3) an overt act was committed furthering the conspiracy. *Commonwealth v.*

11

*Devine*, 26 A.3d 1139, 1147 (Pa. Super. Ct. 2011). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." *Commonwealth v. Murphy*, 795 A.2d 1025, 1038 (Pa. Super. Ct. 2002) (citation omitted).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

*Commonwealth v. McCall*, 911 A.2d 992, 996-97 (Pa. Super. Ct. 2006) (citation omitted).

An accomplice is also legally accountable for another person's conduct involved in the commission of crimes. 18 Pa.C.S.A. § 306(b)(3). The Crimes Code defines an accomplice as follows:

> A person is an accomplice of another person in the commission of an offense if:
>
> (1) with the intent of promoting or facilitating the commission of the offense, he:
>     (i)  solicits such other person to commit it; or
>     (ii) aids or agrees or attempts to aid such other person in planning or committing it; or
> (2) his conduct is expressly declared by law to establish his complicity.

18 Pa.C.S.A. § 306(c).

"Both requirements may be established wholly by circumstantial evidence. Only the least degree of concert or collusion in the commission of the offense is sufficient to sustain a finding of responsibility as an accomplice. No agreement is required, only aid." *Commonwealth v.*

12

*Kimbrough,* 872 A.2d 1244, 1251 (Pa. Super. Ct. 2005) *(en banc)* (citations and quotations omitted). "[P]roof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities." *Id.* at 1253-54 (citation omitted).

> To establish complicity, mere presence at the scene of a crime and knowledge of the commission of criminal acts is not sufficient. Nor is flight from the scene of a crime, without more, enough. However, those factors combined, along with other direct or circumstantial evidence may provide a sufficient basis for a conviction, provided the conviction is predicated upon more than mere suspicion or conjecture.

*Commonwealth v. Rosetti,* 469 A.2d 1121, 1123 (Pa. Super. Ct. 1983) (citations omitted).

To reiterate, the testimony of record makes clear that the confrontation started as a robbery when the Defendants and DeCicco and McNerney met on Maiden Street. When DeCicco would not give Simmons his cell phone, Simmons punched DeCicco, who then fell to the ground and continued to get beaten by multiple persons for 20 seconds until there was a sudden break that allowed him to escape. Although Attorney DeRiso pointed to Simmons as the "catalyst" he explained that "[a]s Mr. McNerney attempted to aid his friend [Zach DeCicco], Mr. Wells delivered, for a lack of a better term, a sucker punch to Mr. McNerney, causing Mr. McNerney to fall back and strike his head and die." Transcript of Proceedings Held on May 27, 2014 at p. 17, LL. 19-22. In addition, the Defendant had McNerney's cell phone after DeCicco and McNerney were beaten. Therefore, the record reflects that the Defendant, at the very least, committed an act furthering the initial intended crime of robbing a person of their cell phone. Because Mr. McNerney died as a result of the Defendant's punch, the Defendant was subject to a verdict of second degree murder. Accordingly, the Court finds that the Defendant's second claim in his amended PCRA petition lacks merit. Concomitantly, the Court finds that the Defendant has failed to establish that plea counsel's actions resulted in prejudice—the Defendant received a

13

much lower sentence for third degree murder than he would have if convicted for second degree murder.

With respect to the Defendant's third claim that Attorney DeRiso was ineffective in permitting the trial court to participate in plea negotiations by meeting with the trial court and the prosecution in chambers before the proposed plea agreement was entered, the record does not reflect a violation of the Defendant's due process rights. The Defendant claims that the trial judge, Edward Borkowski, was impermissibly involved in plea negotiations and supports his argument by stating that "it would be absurd on its face to urge a client to enter a plea to homicide generally and robbery arising out of the same criminal episode. This is because the defendant would receive no benefit to pleading guilty since he would be subjected to life imprisonment for felony murder, the same period of incarceration if he went to trial and was found guilty of first-degree murder." *See* Defendant's Brief in Support of Amended PCRA Petition at p. 20. According to the Defendant, Attorney DeRiso's fear that he "would be convicted of robbery if he went to trial, subjecting him to second degree murder can only be reconciled with urging him to plead guilty to robbery if the trial court improperly engaged in plea negotiations and promised it would not find felony murder." *Id.* at p. 20 n.5.

The Defendant cites the case of *Commonwealth v. Evans*, 252 A.2d 689 (Pa. 1969) to further his position. Therein, the Pennsylvania Supreme Court stated, "We feel compelled to forbid any participation by the trial judge in the plea bargaining *prior* to the offering of a guilty plea." *Id.* at 691 (emphasis in original). The High Court came to this conclusion for three reasons:

> First, the defendant can receive the impression from the trial judge's participation in the plea discussions that he would not receive a fair trial if he went to trial before the same judge. Second, if the judge takes part in the pre-plea discussions, he may not be able to judge objectively the voluntariness of the plea when it is

14

entered. Finally, the defendant may feel that the risk of not going along with the disposition which is apparently desired by the judge is so great that he ought to plead guilty despite an alternative desire.

*Id.* at 691-92.

Importantly, the *Evans* opinion discusses with approval the ABA Minimum Standards that preclude a judge from participating in the plea bargaining process *before* a plea bargain or agreement has been reached between the prosecution and the defense. The Standards state that the trial judge may be informed of the final bargain *once* it has been reached by the parties and before the guilty plea is formally offered. *Id.* at 691 n.1. There is nothing prohibiting the trial judge from then indicating to the prosecuting attorney and defense counsel whether he will concur in the proposed disposition.

Herein, the record of the May 27, 2014 hearing does not reflect any participation by the trial judge prior to a plea bargain or an agreement being reached by the parties. Specifically, at the very beginning of the proceeding, Judge Borkowski introduced the parties and their respective attorneys. Immediately thereafter, the judge states, "The parties, after substantial preparation and discussion, have reached an agreement." Transcript of Proceedings Held on May 27, 2014 at p. 2, LL. 15-16. The attorneys representing the co-defendants and the Commonwealth then respond in the affirmative to the Court, which was that the Defendant would plead to one count of Robbery and one count of Homicide wherein the Court would determine the degree. *Id.* at pp. 2-3. Thereafter, the Court tells the attorneys that it "will listen to argument from counsel as to the proper degree of guilt." *Id.* at p. 3, LL. 15-17. In sum, the Defendant argued that he had no "intent" as an accomplice at the May 27, 2014 hearing. As Attorney DeRiso emphasized, "[T]here, certainly, was no intent on Mr. Wells to rob anybody. ... The argument is that this is a one punch case, which through accomplice liability, may be a

15

robbery, but that intent was not utilized until after the aggravated assault/manslaughter. That's the argument." *Id.* at p. 17, LL. 23-24; p. 18, LL. 9-13.

In return, the Commonwealth, through First Assistant District Attorney, Chad Schneider, argued to the Court that DeCicco and McNerney were a "mark for a robbery from these three Defendants. And that doesn't happen unless all these Defendants were involved." *Id.* at p. 19, LL. 21-24. Mr. Schneider goes on to state that "things do not happen in a vacuum. This was all part of one occurrence. Zachary DeCicco was approached. He was asked for his phone and his wallet. He did not comply, and he was beaten by the Defendants." *Id.* at p. 20, LL. 6-10. Then, Mr. Schneider noted that McNerney was then hit and robbed of his cell phone and wallet. *Id.* at p. 20, LL. 11-14. Consequently, Mr. Schneider emphasized that the "natural and probable consequence of a robbery is a death, and that's actually contemplated in the Felony Murder Rule, that if somebody dies in the course of a robbery, in the furtherance of a robbery, then it falls under the Felony Murder Rule." *Id.* at p. 18-23.

Based upon the aforementioned, the record belies involvement by the trial judge in fashioning a verdict. Mr. Schneider argued that the Court impose the Felony Murder Rule, which is second degree murder that carries a sentence of life in prison. 18 Pa.C.S.A. § 1102(b). Furthermore, the statute governing the Pennsylvania Board of Probation and Parole instructs that the Parole Board may not parole an inmate serving life imprisonment. 61 Pa.C.S.A. § 6137(a)(1). And, Judge Borkowski clearly stated that, "The Court has to consider a verdict of 2nd Degree Murder...," acknowledging that the defendants "have exposure" to a 2nd Degree Murder verdict. Transcript of Proceedings Held on May 17, 2014 at p. 22, LL. 8-9; p. 23, LL. 7-9. The Court, however, did not accept the Commonwealth's argument for imposing such a sentence. Judge Borkowski stated,

16

> The Court will enter, consistent with my evaluation in this case, in addition to the verdict of Robbery on each Defendant, will enter verdict as to Eric Wells, 3rd Degree Murder; as to Troy Simmons, 3rd Degree Murder; and as to Mr. Hankins, 3rd Degree Murder. Of course, the remaining charges will be dismissed pursuant to the agreement of the parties to proceed in this posture.

*Id.* at p. 23, LL. 13-20.

Nevertheless, even if the trial judge were somehow involved in plea agreement negotiations, the Defendant did not articulate how he was prejudiced. The Defendant merely states that he is entitled to withdraw his plea. *See* Defendant's Brief in Support of Amended PCRA Petition at p. 21. In the case of *Commonwealth v. Vealey*, 581 A.2d. 217 (Pa. Super. Ct. 1990), the appellant was sentenced to one term of incarceration of life imprisonment; he did not file a direct appeal. Eighteen years later, however, the appellant filed a PCHA (now known as a "PCRA") petition. Among other things, the appellant argued that he should be allowed to withdraw his plea because his due process rights were violated. More specifically, he alleged that the trial judge "participated in an *ex parte* plea bargaining negotiation with defense counsel, entering a private plea agreement and failing to advise the defendant of the existence of such agreement until eighteen (18) years later." *Id.* at 218.

The *Vealey* Court discussed *Evans*, but did not find that the appellant's due process rights were violated.

> [A]ssuming that the agreement in question actually did exist, we have carefully reviewed the record and the parties' briefs, and find no evidence that appellant was prejudiced by it in any way, as he was unaware of it, and there is no suggestion as to how it adversely affected counsel's stewardship. Under these circumstances, we are satisfied that, although the court may have acted erroneously in appearing to enter into an arrangement with trial counsel, that error did not result in prejudice to appellant. Therefore, appellant's argument that he should be allowed to withdraw his plea because of the alleged agreement between trial counsel and the court is meritless.

17

*Id.* at 221.

It is clear to this Court, just as it was to Judge Borkowski, that the Defendant herein has "exposure" to a second degree murder conviction based upon the record. The sentence for second degree murder is life without parole. The trial court did not impose this sentence. Instead, the trial court imposed a third degree murder verdict on the Defendant, as well as a single count of Robbery. As a result, the Defendant was sentenced to 10-25 years of incarceration for the third degree murder finding and a consecutive period of 3-6 years of incarceration for the robbery charge, with a 5 year period of probation to follow. Therefore, the Defendant was not prejudiced and, in turn, the Defendant has failed to satisfy the standard for relief based on ineffective assistance of counsel.

BY THE COURT,

Gary Gilman, Judge